TEXAS RURAL LEGAL AID,
INC., et al., Plaintiffs,

v.

LEGAL SERVICES CORPORATION,
Defendant.

Civ. A. No. 89–3442.

United States District Court,
District of Columbia.

Jan. 13, 1992.

Court of Appeals reversed and remanded. 940 F.2d 685 (D.C.Cir.1991). When the mandate was returned, the Court gave the parties an opportunity to file further dispositive motions on related issues that the Court of Appeals considered still viable, namely, whether or not the regulation is arbitrary and capricious and whether or not the regulation violates plaintiffs' First Amendment rights. Plaintiffs, after further discovery, chose to embellish their prior motion for summary judgment on these issues and filed another dispositive summary judgment motion. Defendant opposed and continued to rely on its prior summary judgment motion covering these issues, which was still pending.

The Court finds no merit in the plaintiffs' motion on the two remaining issues and concludes that judgment must be entered for LSC in this facial attack upon the regulation in dispute.

Paul Nielson, Richard J. Oparil, Linda E. Perle, William T. Lake, Washington, D.C., for plaintiffs.

Charles J. Cooper, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

Plaintiffs continue efforts to set aside a final regulation of the Legal Services Corporation ("LSC") prohibiting a legal aid organization receiving its funds from participating in a redistricting case, even when the organization has determined under procedures set out in the enabling statute that the litigation is necessary to benefit the poor. The LSC Act, as amended, is found at 42 U.S.C. §§ 2996, et seq., and the regulation in dispute, adopted August 3, 1989, is at 45 C.F.R. Part 1632, 54 Fed.Reg. 31594 (1989).

The background facts are fully set out in prior litigation. Originally the matter came before this Court on cross-motions for summary judgment and the Court found the regulation clearly contrary to LSC's authority. *See Texas Rural Legal Aid, Inc. v. Legal Services Corporation,* 740 F.Supp. 880 (D.D.C.1990). The U.S.

I

■ Because the Court of Appeals ruled that LSC has broad authority to promulgate regulations, plaintiffs have a heavy burden in attempting to establish that LSC acted arbitrarily or capriciously. Although LSC had long condoned involvement in redistricting cases by LSC-funded organizations, its prior inaction on this subject does not comprise an official or affirmative decision to allow participation in redistricting work at all times in the future. The rule, therefore—LSC's first official action in the area—was not a reversal of prior agency action. Moreover, the rule is not entirely a new policy decision that can be distinguished from other instances of rulemaking based on factual findings. Nor did promulgation of the rule require an unusual exercise of agency expertise. LSC claimed simply that it had identified a particular problem requiring action because of budgetary and other reasons, and it then proceeded to address the problem pursuant to its interpretation of its statutory authority. This Court could not find such authority. However, given the Court of Appeals' determination that LSC was fully authorized by the statute to act in this area, all that remains for this Court on remand is to

review the rule and its promulgation under the traditional "rational basis"/"arbitrary or capricious" analysis. *See Spokane County Legal Services, Inc. v. Legal Services Corporation,* 614 F.2d 662, 669 (9th Cir.1980).

■ Plaintiffs' post-remand discovery has revealed transcripts of what LSC's lawyers, surely with tongue-in-cheek, characterize as deliberations. Nonetheless, this Circuit has held that "[w]here an agency has issued a formal opinion or a written statement of its reasons for acting, transcripts of agency deliberations ... should not routinely be used to impeach that written opinion." *Kansas State Network, Inc. v. F.C.C.,* 720 F.2d 185, 191 (D.C.Cir.1983); *accord LO Shippers Action Committee v. I.C.C.,* 857 F.2d 802, 805–06 (D.C.Cir.1988), *cert. denied,* 490 U.S. 1089, 109 S.Ct. 2429, 104 L.Ed.2d 986 (1989). It has long been recognized that District Courts cannot test the mental processes of agency decision-makers except in very unusual circumstances. *See* Kenneth Culp Davis, 3 *Administrative Law Treatise* §§ 17:4–17:5 (1980). In this case, plaintiffs have made an insufficient showing of procedural irregularity to warrant such a problematic and likely inconclusive inquiry. The agency did issue a written opinion, in the form of its final version of the rule, published in the *Federal Register. See* 54 Fed.Reg. 31954. In the *Federal Register,* LSC's staff explained the rationale for adopting the rule, set forth the facts relied on, and responded to the written and oral comments. There was at least some basis for their conclusions in the record.

■ It is apparent from the record that LSC was preoccupied with its growing belief that there is something pernicious in litigation brought on behalf of the poor that could possibly have some political consequences, even when the thrust of the litigation is clearly to support the objectives of LSC's enabling statute. The proof strongly suggests that the knowledge of the LSC board in this area was limited, and thus some of its assumptions in this respect may well be flawed. Nonetheless, there was comment material to bolster those misapprehensions, and the Court's understanding of the facts is irrelevant. The test is not whether an agency's reasons are correct, but whether they are rationally based. Moreover, the rule need not be the best rule conceivable; nor, under the standard of review, must the rule be perfectly fitted to the problems the agency purports to be addressing. *See Motor Vehicles Manufacturers Association v. State Farm Mutual Auto Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *FORMULA v. Heckler,* 779 F.2d 743, 760–61 (D.C.Cir.1985). Thus this Court finds that LSC did not act arbitrarily or capriciously as a matter of law on the relevant undisputed facts shown.

## II

Plaintiffs also claim that the regulation improperly constrains speech protected by the First Amendment, and that it is over broad, vague, and an unconstitutional condition.[1] None of these First Amendment claims have merit sufficient to overturn the rule on its face. Acting within the broad policy authority that the Court of Appeals has since approved, LSC determined as a matter of discretion that it should not finance redistricting lawsuits and related activities. The regulation specifically accomplishes that end. It simply prohibits recipients of LSC funds or their employees from using LSC funds to engage in redistricting activities of any kind.

■ Although, generally speaking, a lawyer's work always has First Amendment consequences in that it is composed of what the attorney writes or says, this does not mean that a rule that forbids a lawyer from representing a particular type of client in a particular type of case necessarily infringes on the lawyer's First Amendment rights. Otherwise, any type of restraint on a lawyer's work, including the other restraints in the Legal Services Corporation Act itself, *see, e.g.,* 42 U.S.C.

---

1. The Court of Appeals has already held that at least in this context, LSC is a "state actor for First Amendment purposes." 940 F.2d at 699.

§ 2996f(b) (other limitations on uses), would be unconstitutional. When potential clients come to an LSC-funded legal services organization with a redistricting problem, the organization may, under the rule, inform the clients that it may not handle such cases. If the organization's lawyers were allowed to go beyond that, they would actually be giving advice; · and lawyerly advice is exactly what the LSC funds pay for. Thus, if the Court were to grant plaintiffs' motion and invalidate the regulation or even the entire statute on First Amendment grounds, the Court would, in essence, be requiring the government to finance something that it has properly determined it does not want to finance, and that, moreover, it is not required to finance under the decision of the Court of Appeals.

It is important to emphasize that, as in *Rust v. Sullivan*, — U.S. —, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), plaintiffs are essentially challenging only the facial validity of the rule, as opposed to any specific instance of its enforcement. Thus, the relevant question is whether the regulation

> can be construed in such a manner that [it] can be applied to a set of individuals without infringing upon constitutionally protected rights. [Plaintiffs] face a heavy burden in seeking to have the [rule] invalidated as facially unconstitutional.

*Id.* at —, 111 S.Ct. at 1767 (citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). The rule at issue does not prohibit employees of recipient organizations from engaging in otherwise permissible redistricting activities outside the context of their work, provided they do not make use of organization facilities or funds. *See* 45 C.F.R. Part 1632.4(c). Nor does the rule in any way affect the rights of anyone to bring redistricting cases. It simply provides that no LSC funds, directly or indirectly, are to be spent on such cases. Indeed, the rule does not even go as far as the regulation upheld in *Rust*, because as LSC concedes, it would not be improper under the LSC rule for a recipient to "advise potential clients of alternative counsel who might be willing to represent them in a redistricting matter."

Def. Memo. at 38; *see Rust*, — U.S. at —, 111 S.Ct. at 1765. Moreover, since "the government is not denying a benefit to anyone, but is instead simply insisting that public funds be spent for the purposes for which they were authorized," plaintiffs' argument that the rule constitutes an unconstitutional condition is similarly unavailing. *Rust*, — U.S. —, 111 S.Ct. at 1774.

As a result, plaintiffs' facial challenge to the regulation on First Amendment grounds must fail. Any such challenge must await a concrete instance of excessive application of the rule's strictures in a given situation—possibly an instance in which a lawyer is required by LSC to withdraw from an ongoing redistricting case over the judge's objection.

In the last analysis, the broad question presented by this litigation is whether or not the action of LSC approved by the Court of Appeals is consistent with congressional purpose. There is room for disagreement with the Circuit Court's judicial resolution of this fundamental issue, but Congress can correct the problem if it has cause to believe that its program has been diverted from one of its major objectives.

LSC's motion for summary judgment is granted.